UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Leonardo Buckner,<br><br>   Plaintiff,<br><br>v.<br><br>United States of America,<br><br>   Defendant. | CIVIL ACTION NO.: **9:21-cv-2668-BHH**<br><br>**COMPLAINT**<br><br>**(Jury Trial Requested)** |

Plaintiff, Leonardo Buckner, complaining of Defendant, United States of America, respectfully shows unto the Court as follows:

## PARTIES, JURISDICTION AND VENUE

1. This is a dental malpractice case brought under the Federal Tort Claims Act ("FTCA") for severe and permanent injuries Mr. Buckner suffered arising out of negligent acts or omissions of Beaufort-Jasper-Hampton Comprehensive Health Services, Inc. ("BJHCHS") or its employees.

2. BJHCHS receives funding from the United States Department of Health and Human Services or has Federal Public Health Service ("PHS") deemed status with respect to certain health or health-related claims, including medical malpractice claims, for itself and its covered individuals, such that BJHCHS, its employees, agents and assigns are employees of the federal government for purposes of this lawsuit and coverage under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, et seq.

3. Liability of the United States and BJHCHS is predicated on 28 U.S.C. §§ 1346(b)(1) and 2674 because the personal injuries and resulting damages that form the

1

basis of this Complaint were proximately caused by the negligence, wrongful acts and/or omissions of employees of the United States of America through its agency, BJHCHS. These employees were acting within the course and scope of their office or employment, under circumstances were the United States of America, if a private person, would be liable to the Plaintiff in the same manner and to the same extent as a private individual under the laws of the State of South Carolina.

4. Plaintiff Leonardo Buckner is a citizen and resident of Jasper County, South Carolina.

5. This Federal District Court has jurisdiction of this case, because this action is brought pursuant to and in compliance with 28 U.S.C. §§ 1346(b), 2671-2680 et seq., commonly known as the "Federal Tort Claims Act," which vests exclusive subject matter jurisdiction of Federal Tort Claims Act litigation in the Federal District Court.

6. Venue is proper in the Beaufort Division pursuant to 28 U.S.C. § 1391(e)(1); 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2), because BJHCHS is a healthcare organization considered as an employee of the United States for purposes of the FTCA, that operates a dental care practice in Jasper County, South Carolina, and a substantial part of the events or omissions giving rise to the claims herein occurred within Jasper County; all of which are within the Beaufort Division of this Court.

**PRE-SUIT PROCEDURES**

7. On August 9, 2021, a Notice of Intent to File Suit, Short Plan Statement of Facts, expert affidavit of Brian J. Dorman, D.M.D., M.D., and Plaintiff's Answers to Standard Interrogatories were filed with the Clerk of Court of Beaufort County and given

2

Civil Action Number 2021-NI-07-00008 (filed with this Complaint as **Exhibit 1**). All parties were subsequently served with the documents described in the preceding paragraph.

## JURISDICTIONAL PREREQUISITES

8. Pursuant to 28 U.S.C. §§ 2672 and 2675, the claims set forth herein were filed with and presented administratively to the appropriate Agency or agent of Defendant, including the Department of Health and Human Services, in a timely manner; were received by said agent or Agency on November 25, 2020; that said Agency has not made final disposition of the claims within six months after such filing, and such claims should be deemed to have received a final denial of the claims.

9. Plaintiff has filed the affidavit of an expert witness with this Complaint, pursuant to South Carolina Code § 15-36-100, to comply with South Carolina State Law.

10. Plaintiff has filed a "Notice of Intent" and its accompanying documents within the Court of Common Pleas in Jasper County, South Carolina, pursuant to South Carolina Code § 15-79-125, as a prerequisite to filing an action within the South Carolina Court of Common Pleas, in compliance with South Carolina State Law.

11. Plaintiff has complied with all jurisdictional prerequisites and conditions precedent to commencement and prosecution of this litigation.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

12. At all times material hereto, all persons involved in the dental, medical and health care services provided to Mr. Buckner were agents, servants, and/or employees of BJHCHS, the United States of America, or some other agency thereof, and were at all times material hereto, acting within the course and scope of such employment.

13. At all times relevant hereto, Dr. Jenni Sherban ("Dr. Sherban"), was a dentist practicing at BJHCHS, employed by and under the control of BJHCHS and Defendant United States; or through BJHCHS's relationship with Defendant United States.

14. At all times relevant to this action, Dr. Sherban was acting on behalf of and within the scope of her employment or relationship with BJHCHS and Defendant United States; or through BJHCHS's relationship with Defendant United States.

15. At all times relevant to this action, a doctor-patient or dentist-patient relationship existed between Dr. Sherban and Mr. Buckner.

16. At all times relevant to this action, Dr. Sherban was the agent or apparent agent of BJHCHS or the United States of America, with BJHCHS the agent or apparent agent of the United States of America; and all acts and omissions of Dr. Sherban while serving as Mr. Buckner's Dentist were performed within the scope of her employment and/or agency with BJHCHS or the United States of America.

17. On December 5, 2018, Mr. Buckner went to BJHCHS for an office visit for pain in his lower right jaw. Dr. Sherban, a dentist practicing at BJHCHS, saw Mr. Buckner on this visit. Dr. Sherban noted that Mr. Buckner presented with constant and throbbing pain in his lower right jaw that started about two and one-half weeks prior to this visit, with Mr. Buckner reporting pain at 10/10 in the area.

18. Dr. Sherban performed limited imaging in the form of one periapical ("PA") x-ray of tooth #32. Dr. Sherban's clinical exam revealed a large Peri Apical Radiolucency ("PARL") and +3 mobility in tooth #32. Dr. Sherban's clinical exam further noted white patches ulcer like and a radio-opacity in the ridge. A differential diagnosis of these findings would include oral cancer or osteomyelitis.

4

19. Despite Mr. Buckner's severe pain, the length of time the pain already persisted, the readily apparent PARL, the gross mobility of tooth #32, and the pathology observable and documented anterior to the tooth; in deviation of the applicable standard of care, including application of a differential diagnosis approach, Dr. Sherban neglected to conduct a more intensive study of Mr. Buckner's lower right jaw, including ordering an immediate panorex, or CT scan imaging, that would have demonstrated that Mr. Buckner more likely than not had already developed osteomyelitis or that would have led to an appropriate diagnosis of osteomyelitis.

20. Instead, Dr. Sherban extracted tooth #32 and simply advised Mr. Buckner that he should follow-up with her in a week and consider seeing an oral surgeon, although no actual, specific referral was made.

21. Despite the presence of white lesions and the radio-opacity in the jaw and other information from a subjective, clinical, and radiographic exam showing progressing infection, Dr. Sherban neglected to prescribe antibiotics.

22. Mr. Buckner followed-up with Dr. Sherban on December 12, 2018. Mr. Buckner again reported intense pain in his lower right jaw.

23. Dr. Sherban's clinical exam demonstrated a very tender area around teeth # 30/31, with what appeared to be a large flap of tissue, with noted mobility on tooth #29. The gingival tissue was again noted to be atypical.

24. Despite clear signs of progressing infection and destructive pathology, again, in deviation of the applicable standard of care, including application of a differential diagnosis approach, Dr. Sherban neglected to conduct a more intensive study of Mr. Buckner's lower right jaw, including ordering an immediate panorex, or CT scan, that

would have demonstrated that Mr. Buckner had already developed osteomyelitis or that would have led to an appropriate diagnosis of osteomyelitis.

25. Instead, Dr. Sherban ordered one periapical ("PA") x-ray and one bitewing ("BW") x-ray of teeth #28 and #29; and recommended, but did not make, a referral to Oral Surgery for "potential" pathology."

26. Yet, again, in deviation of the applicable standard of care, Dr. Sherban did not make a referral to an oral surgeon.

27. Despite the presence of white lesions, intense pain, and other information from a subjective and clinical exam showing progressing infection, Dr. Sherban neglected to prescribe antibiotics.

28. Also, Dr. Sherban did not recommend to Mr. Buckner that he schedule a follow-up with her, instead noting that whenever the next visit with Mr. Buckner occurred, she would check his progress and would then, if needed, finally perform a comprehensive evaluation with full mouth radiographs.

29. If Dr. Sherban had undertaken a differential diagnosis, as required by the applicable standard of care, the appropriate imaging would have been conducted on December 5, 2018, and with the evidence within the imaging, Dr. Sherban should have immediately prescribed antibiotics to treat the obvious infection; and made an immediate referral to an oral surgeon.

30. If, on the follow-up visit, Dr. Sherban had undertaken a differential diagnosis, as required by the applicable standard of care, the appropriate imaging would have been conducted on December 12, 2018, and either with the evidence within the imaging, or even based only on readily observable physical abnormalities, Dr. Sherban

should have immediately prescribed antibiotics to treat the obvious infection and made an immediate referral to an oral surgeon.

31.     On January 15, 2019, Mr. Buckner presented to Dr. Patrick Kline ("Dr. Kline"), of Beaufort Oral and Facial Surgery.

32.     Dr. Kline noted a mobile right mandibular body with clicking sound, fetid halitosis, significant right body of mandible soft tissue swelling ("STS"), with fluctuance and discharge.

33.     Dr. Kline ordered and interpreted a Panoramic radiograph ("Pan") on this date that demonstrated proximal rotation of the fractured mandible with inferior border stepping, indicating Mr. Buckner's jaw was broken.

34.     Dr. Kline wrote Dr. Sherban regarding his observations, indicating that by January 15, Mr. Buckner had had weeks of purulent drainage intraorally. Dr. Kline noted in several portions of his correspondence that Mr. Buckner had apparently been infected for several weeks, with no history of having been prescribed an antibiotic.

35.     On January 16, 2019, the day after Mr. Buckner presented to Dr. Kline and more than one month after Mr. Buckner first presented with clinical signs of progressing pathology, Dr. Sherban made a referral.

36.     As a result of over a month of delay occasioned by Dr. Sherban's errors and omissions, from December 5, 2018 to January 15, 2019, Mr. Buckner was forced to endure pain, suffering and anguish that would have been greatly alleviated or eliminated if antibiotics and a proper treatment plan had been implemented, whether as a result of the December 5, 2018 encounter or even as a result of the December 12, 2018 encounter.

37.     Dr. Sherban's duties as Mr. Buckner's treating dentist were continuing and ongoing up through January 15, 2019.

38. Further, the delay in treatment occasioned by Dr. Sherban's errors and omissions more likely than not was a proximate cause of the severity of Mr. Buckner's infection.

39. Dr. Sherban's errors and omissions more likely than not were a proximate cause of the broken jaw Mr. Buckner sustained.

40. But for Dr. Sherban's errors and omissions on December 5 and December 12, 2018, and in the time period from December 13, 2018 up to January 16, 2019, the fibula free flap from his leg and mandibular reconstruction would not have been required had the infection been diagnosed and properly controlled instead of being allowed to continue through January 15, 2019. If Dr. Sherban had acted within the applicable standard of care, more likely than not, Mr. Buckner would have been treated in December with a localized debridement and placement of a titanium plate to repair his fractured mandible.

41. Eventually, after several courses of antibiotics and biopsies, Mr. Buckner underwent surgery, enduring the following procedures on April 25, 2019: free fibula flap to mandible, skin graft, fat graft with spy tracheostomy, surgical extraction teeth #1, 2, 3, 15, 16 and 23 for resection of osteomyelitic mandible, resection of necrotic/osteomyelitic mandible including removing teeth 24-27, intraoral adjacent tissue transfer attached and unattached buccal mucosa with posterior back cut, change in orientation of tissue; fat grafting to pedicle, and injection of dye agent for verification of flap perfusion ("spy elite system").

42. The pathology report following section of the removed right mandible material and lymph node collected on April 25, confirmed acute and chronic osteomyelitis, bone with partial osteonecrosis, skin with underlying soft tissue with chronic inflammation,

8

and one benign lymph node, ruling out any type of cancer having necessitated these painful treatments.

43.    As a direct and proximate result of the negligence, carelessness, gross negligence, and recklessness of BJHCHS and agents and employees of BJHCHS, Mr. Buckner unnecessarily suffered permanent loss of his lower right jawbone, loss of his teeth, loss of a bone in his leg to replace the lost jawbone, severe infection, inability to eat, past and future pain and suffering, past and future care expenses, past and future physical impairment, past and future medical and health care expenses, past and future loss of enjoyment of life, disfigurement and loss of earning capacity.

44.    Had Dr. Sherban met the standard of care and attendant duties owed to Mr. Buckner, Mr. Buckner would not have been forced to endure additional pain, suffering surgeries, disfigurement and loss of enjoyment of life; the fibula free flap from his leg and mandibular reconstruction would not have been required had the infection been diagnosed and properly controlled instead of being allowed to continue through January 15, 2019; and more likely than not, Mr. Buckner would have been treated in December with a localized debridement and placement of a titanium plate to repair his fractured mandible.

**FOR A FIRST CAUSE OF ACTION**
(Negligence – Dental Malpractice)

45.    The foregoing factual and jurisdictional allegations are reiterated and realleged as through set forth verbatim.

46.    Defendant, and/or their agent(s) and/or employee(s), had a duty and did undertake the duty to render proper dental care to Mr. Buckner in accordance with the

9

prevailing professional standards of care for dental providers in the national community; at Dr. Sherban's December 5, 2018, encounter with Mr. Buckner; at Dr. Sherban's December 12, 2018, encounter with Mr. Buckner; and during the period of time between December 13, 2018 and January 16, 2019.

47. Notwithstanding said undertakings, and while Mr. Buckner was under Defendants' care, and/or that of their agents and/or employees, said Defendant and/or their agents departed from prevailing and acceptable professional standards of dental care and treatment of Mr. Buckner and were thereby negligent, careless, grossly negligent, reckless, and in violation of the duties owed to Mr. Buckner in three separate and distinct occurrences: on December 5, 2018; December 12, 2018; and in the time period between December 13, 2018, and January 16, 2019; and are liable for one or more of the following acts of omission or commission:

   a. Failing to image the patient to accurately diagnose.

   b. Failing to accurately develop a treatment plan.

   c. Failing to incise and drain an obvious infection.

   d. Failing to immediately refer the Plaintiff to an oral and maxillofacial surgeon for an incision and drainage of an obvious infection.

   e. Failing to prescribe immediate antibiotics in the presence of an infection in the tissues.

   f. Failing to refer to an oral and maxillofacial surgeon when the Plaintiff presented with continued swelling and mobility on several occasions.

   g. Failing to engage in a differential diagnosis of the patient's symptoms and taking necessary steps to rule out the most dangerous maladies.

10

       h.      On three separate occasions, December 5, 2018; December 12, 2018; and in the time period after December 12, 2018 up to January 16, 2019; failing to recognize the signs and symptoms of osteomyelitis when Mr. Buckner presented.

       i.      Failing to properly image the Plaintiff when his complaint history and/or clinical presentation required that imaging be performed.

       j.      Failing to recognize the Plaintiff had a fractured jaw and osteomyelitis.

       k.      Failing to refer the Plaintiff when he presented with a fractured jaw and obvious osteomyelitis.

       l.      Failing to properly document the record of Plaintiff's visits.

       m.      In otherwise failing to perform dental procedures prudently and adequately to avoid damaging and causing permanent damage to Mr. Buckner.

       n.      In otherwise failing to perform dental procedures prudently and adequately to avoid causing intense and unnecessary pain to Mr. Buckner as infection smoldered inside his jawbone.

       o.      In such other as may be ascertained through discovery procedures undertaken pursuant to the South Carolina Rules of Civil Procedure.

48.    As a direct and proximate result of the negligence, carelessness, gross negligence, recklessness and failures to provide proper dental care by Defendant and its agents/employees, as noted above, Mr. Buckner suffered from severe debilitating injuries which resulted in extensive and expensive medical procedures, surgeries, severe pain, bone loss of his mandible, scarring and disfigurement, inability to eat and move his neck,

and loss of enjoyment of life. Mr. Buckner is entitled to a sum of money to be compensated for these damages and is also entitled to recover punitive damages from Defendant. All damages should be in an amount determined by the trier of facts of this lawsuit.

## TRIAL BY JURY

49.     Plaintiffs request and demand a jury trial on all claims and issues so triable.

## EXPERT AFFIDAVIT

52.     Pursuant to S.C. CODE ANN. § 15-36-100(B) (2006), attached hereto and incorporated herein by reference as **Exhibit 2**, is the affidavit of Brian J. Dorman, D.M.D., M.D., an expert witness in the field of oral and maxillofacial surgery, which specifies at least one negligent act or omission claimed to exist and the factual basis for each claim based on the available evidence at the time of the filing of the affidavit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Leonardo Buckner, respectfully prays for judgment against the United States of America and/or BJHCHS and/or Dr. Sherban, jointly and severally, for actual damages, consequential damages, and punitive damages in an amount to be determined by the trier of the facts of this matter, for costs and disbursements of this action, and for such other relief as this Court deems just and proper.

Respectfully submitted,

PENDARVIS LAW OFFICES, P.C.

s/ Thomas A. Pendarvis
Thomas A. Pendarvis (Fed. Id. 5785)
Christopher W. Lempesis, Jr. (Fed. Id. 11462)
710 Boundary Street, Suite 1-A
Beaufort, SC 29902
843.524.9500 Tel.
Thomas@PendarvisLaw.com
Chris@PendarvisLaw.com


PALMER LAW FIRM, L.L.C.

s/ Olivia C. Palmer, D.M.D., J.D.
(Fed. Id. 464568129)
Post Office Box 1121
Beaufort, SC 29901
843-577-2727 (phone)
drpalmer@drpalmerlaw.com

Counsel for Plaintiff

Beaufort, South Carolina

August 19, 2021